UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| IOSIX, LLC, | |
| Plaintiff, | |
| v. | Case No. 24-cv-10777 |
| EZLOGZ, INC., | Honorable Robert J. White |
| Defendant. | |

## ORDER DENYING MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

This case arises from a contract for Defendant EZLogz, Inc. to lease electronic tracking devices (ELDs) utilized in commercial trucking from Plaintiff IOSiX, LLC. (ECF No. 1). Plaintiff asserts one claim against Defendant for breach of contract (ECF No. 1), and Defendant asserts counterclaims against Plaintiff for breach of contract and breach of warranty (ECF No. 15). Before the Court is Plaintiff's motion to dismiss Defendant's counterclaims under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 17). The Parties fully briefed the motion and the Court held oral argument. For the following reasons, the Court denies the motion.

## I.     Background

Plaintiff claims that Defendant breached the parties' leasing agreement by (1) failing to make payments as required by the contract; (2) failing to obtain insurance; and (3) losing, damaging, and/or altering Plaintiff's equipment. (ECF No. 1, PageID.21-23).   Defendant's counterclaims, however, allege that there were "immediate problems regarding the IOSIX ELDs' functionality." (ECF No. 15, PageID.140).   Defendant alleges that Plaintiff subsequently made various "affirmations of fact, promises, and descriptions relating to the IOSIX ELDs" that "became part of the basis of the bargain for EZLOGZ's continued lease of IOSIX ELDs."  Specifically, Plaintiff allegedly assured Defendant that any ELD defects would be cured, and that the equipment would be complaint with applicable regulations and compatible as necessary for Defendant's customers. (ECF No. 15, PageID.141-43).  According to Defendant, it relied on these statements to continue leasing Plaintiff's equipment, but it could not fulfil its obligations to its customers because Plaintiff never cured the ELD defects. (ECF No. 15, PageID.142-44).

Concerning Defendant's specific counterclaims, it alleges that Plaintiff breached the parties' agreement "by, among other things, failing to deliver the IOSIX ELDs when and in the condition promised and failing to adequately repair or replace the defective ELDs." (ECF No. 15, PageID.145).  And Defendant alleges that Plaintiff breached express warranties it made regarding the equipment's regulatory

compliance and technical compatibility because the ELDs were nonconforming on both issues. (ECF No. 15, PageID.146).

Plaintiff now moves to dismiss Defendant's counterclaims, arguing that (1) the breach of contract claim premised on nonconforming or defective equipment fails as a matter of law because Defendant agreed to lease the equipment "as is"; and (2) the breach of warranty claim fails as a matter of law because the alleged statements purporting to establish express warranties are either (a) too vague or ambiguous to do so, (b) ineffective because they occurred after the parties executed their agreement, or (c)—if the statements did occur before or contemporaneous with execution—nonactionable because the statute of limitations has expired. (ECF No. 17, PageID.167-77; *see also* ECF No. 12, PageID.129-32).  Defendant counters that it sufficiently pled both its breach of contract and breach of warranty claims, essentially arguing that the parties mutually agreed to modify their initial agreement to include the asserted guarantees regarding the ELD's condition and functionality. (ECF No. 20).[1]

---

[1] Defense counsel clarified at the hearing that the entire breach of contract counterclaim is premised on Defendant's modification theory, i.e., that Plaintiff only breached the alleged post-execution warranties.  Stated differently, Defendant is not alleging any breach of the parties original, written agreement.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.   "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*

*v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Generally, the court may not consider matters outside of the pleadings in ruling on a motion to dismiss. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The court may, however, consider any documents attached to the complaint, public records, or exhibits that are referred to in the complaint "and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here, the parties' formal agreement is attached to Plaintiff's complaint. Because this agreement is referred to in and central to Defendant's counterclaims, the Court considers it in ruling on the instant motion. The Court also considers Plaintiff's Exhibit 1 to its reply brief (ECF No. 21, PageID.232-40) to the extent it includes communications referred to in and central to the counterclaims.

## III.   Analysis

Under Michigan law, a party alleging breach of contract must demonstrate "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Zwiker v. Lake Superior State Univ.*, 340 Mich. App. 448, 477-78 (Mich. Ct. App. 2022). Breach of express warranty requires "(1) proof of an express warranty, (2) reliance by the plaintiff; (3) the failure of the product to meet the warranty, and (4) damages caused by the failure." *Teal v. Argon*

5

*Med. Devices, Inc.*, 533 F. Supp. 3d 535, 545 (E.D. Mich. 2021). And the equipment

lease agreement at issue here is governed by Michigan's Uniform Commercial Code

(UCC). *See* Mich. Comp. Laws § 440.2801-2982.[2] Under the UCC, an express

warranty may be created as follows:

> (a) Any affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods will conform to the description.

> (c) Any sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods will conform to the sample or model.

Mich. Comp. Laws § 440.2860(1).

The parties' original written agreement was executed on November 27, 2017,

with an effective date of November 7, 2017. (ECF No. 1, PageID.26). As it relates

to the condition of the equipment at issue, the agreement states:

> *Warranties.* LESSOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT, ITS MERCHANYABILITY, OR ITS FITNESS OR

---

[2] At the hearing, defense counsel briefly questioned whether the UCC applies given Plaintiff's assurances (as alleged by Defendant) to fix the ELDs through software updates and the like. But even accepting that Plaintiff made assurances and/or efforts to cure the alleged ELD defects, the "predominant purpose" of the parties' agreement was to acquire a product. *See Challenge Mfg. Co., LLC v. Metokote Corp.*, 345 Mich. App. 338, 346 (Mich. Ct. App. 2023).

CAPACITY OR DURABILITY FOR ANY PARTICULAR PURPOSE, OR THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE EQUIPMENT, AND, AS TO LESSOR, LESSEE LEASES THE EQUIPMENT "AS IS." Lessor shall have no liability for any damages, whether direct, indirect, general, special, incidental, exemplary, or consequential, incurred by Lessee as a result of any defect or malfunction of the Equipment.

(ECF No. 1, PageID.29).

Importantly, the UCC permits parties to disclaim implied warranties in the manner done here. *See* Mich. Comp. Laws § 440.2864. And to the extent this agreement explicitly disclaims any express warranty, such terms memorialized in a final writing cannot be contradicted by parol evidence of prior or contemporaneous agreements. *See* Mich. Comp. Laws § 440.2852. Likewise, statements made after an agreement is executed typically cannot create an express warranty, unless such statements constitute a modification.[3] *See Brown v. Monsanto Co.*, 614 F. Supp. 3d 929, 933 (D. Kan. 2020) ("To create an express warranty, the promise or affirmation of fact must become part of the basis of the bargain, meaning the promise must have [been] made prior to or contemporaneous with the execution of the contract.")

---

[3] Mich. Comp. Laws § 440.1303(6) states that "[s]ubject to section 2209, a course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance." Mich. Comp. Laws § 440.2209 is specific to sales of goods and states in relevant part that (1) "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded"; and (2) "[a]lthough an attempt at modification or rescission does not satisfy th[is] requirement[] . . . [,] it can operate as a waiver." Mich. Comp. Laws § 400.2209(2) and (4). The UCC includes identical provisions regarding leased goods. *See* Mich. Comp. Laws § 440.2858.

(quotation marks and citation omitted); *Express Warranties for the Sale of Goods under the Michigan UCC*, LexisNexis Practical Guidance (2025) ("where statements are made by the seller to the buyer, either simultaneously with, or just after consummation of the deal . . . , it can be successfully argued that the sales agreement was modified by inclusion of the additional statement or statements as an express warranty").[4]

Defendant seemingly concedes as much in admitting that Plaintiff, "[i]n the original memorialized version of the parties' agreement," "disclaimed implied and express warranties . . . ." (ECF No. 15, PageID.140).  But Defendant argues that both its counterclaims are sufficiently pled in large part because the parties agreed to modify their initial agreement to include warranties regarding the ELD's condition, regulatory compliance, and compatibility.

### A.   Modification/Waiver

The written lease agreement states that it "may be amended only by an instrument in writing signed on behalf of each of Lessor and Lessee." (ECF No. 1, PageID.31).

> No amendment, supplement, modification, or waiver of this Lease will be binding unless executed in writing by the party to be bound by it. No waiver of any the provisions of this Lease will be deemed or will

---

[4] Although *Brown* is not binding on this Court, it is persuasive to the extent it applies statutory language materially identical to the UCC provisions at issue here. Relatedly, the UCC's separate articles with respect to sales and leases of goods are substantively the same, at least as they apply in this case.

constitute a waiver of any other provision (whether or not similar), nor will the waiver constitute a continuing waiver unless otherwise expressly stated.

(ECF No. 1, PageID.31-32).

Defendant alleges that the modification and added warranties at issue are evidenced by numerous statements and promises by Plaintiff's principal and other agents after the parties executed the initial agreement, as well as the parties' joint efforts to bring the ELDs into compliance with Defendant's needs. But Defendant fails to allege, as confirmed by defense counsel at the hearing, that the modification and warranties were ever agreed to in a signed writing, as necessary per the original written agreement.

Instead, Plaintiff, citing *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362 (Mich. 2003), essentially argues that the written agreement's restriction on modification is unenforceable given the allegations showing mutual assent to include specific warranties with respect to Defendant's continued leasing of equipment. (*See* ECF No. 20, PageID.197-98 ("[U]nder Michigan law, parties are always free to modify previous agreements even when the prior agreement purports to be unchangeable . . . , [and] the parties' mutual assent is a key that opens all doors. And when parties modify the terms of an agreement, the modification is effective even if it contradicts the method of modification set out in the previous agreement. That is exactly what [Defendant] alleges here.")).

*Quality Products*, 469 Mich. 362, states in relevant part:

[I]t is well established in our law that contracts with written modification or anti-waiver clauses can be modified or waived notwithstanding their restrictive amendment clauses.  This is because the parties possess, and never cease to possess, the freedom to contract even after the original contract has been executed.

. . . [A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract. . . .

\*          \*          \*

The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract.  In meeting this clear and convincing burden, a party advancing amendment must establish that the parties mutually intended to modify the *particular* original contract, including its restrictive amendment clauses such as written modification or anti-waiver clauses.

\*          \*          \*

Further, whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement, the significance of such clauses regarding the parties' intent to amend is heightened where a party relies on a course of conduct [rather than an explicit agreement] to establish modification.  This is because such restrictive amendment clauses are an *express mutual statement* regarding the parties' expectations regarding amendments.

Accordingly, in assessing the intent of the parties where the intent to modify is not express, such restrictive amendment provisions are not necessarily dispositive, but are highly relevant in assessing a claim of amendment by course of conduct.  Any clear and convincing evidence of conduct must overcome not only the substantive portions of the previous contract allegedly amended, but also the parties' express

10

statements regarding their own ground rules for modification or waiver as reflected in any restrictive amendment clauses.

*Id.* at 372-75 (emphasis in original).

*Quality Products* therefore supports that a contract may always be amended by mutual assent, even if the modification does not comport with the original agreement's requirement that it be in writing. The Court concludes, however, that this common-law principle is superseded by specific contrary authority under the UCC.

First, Plaintiff is correct that *Quality Products* involved a service contract not governed by the UCC.  And the UCC explicitly states: "A signed lease agreement that excludes modification or rescission except by a signed writing may not be otherwise modified or rescinded . . . ." Mich. Comp. Laws § 440.2858(2).  Given this explicit statutory provision's conflict with the principles of *Quality Products* regarding modification, the UCC must control here. *See Trentadue v. Gorton*, 479 Mich. 378, 389 (Mich. 2007) ("It is axiomatic that the Legislature has the authority to abrogate the common law.  Further, if a statutory provision and the common law conflict, the common law must yield.") (citations omitted); Mich. Comp. Laws § 440.1103(2) ("*Unless displaced* by the particular provisions of this act, the principles of law and equity . . . shall *supplement* its provisions.") (emphasis added).

This conclusion is also consistent with numerous other decisions applying analogous authority under the UCC, both pre- and post-*Quality Products*. *See West*

11

*Cent. Packing, Inc. v. A. F. Murch Co.*, 109 Mich. App. 493, 505 (Mich. Ct. App. 1981) ("A signed agreement that excludes modification except by a signed writing cannot be otherwise modified."); *S2 Yachts, Inc. v. ERH Marine Corp.*, No. 18-389, 2021 U.S. Dist. LEXIS 220543, at *28 (W.D. Mich. Nov. 16, 2021) ("parties to a contract governed by the U.C.C. may provide in writing that amendments or modification to their contracts may only be in writing"); *Bekum Am. Corp. v. Scantibodies Lab'y, Inc.*, No. 369952, 2025 Mich. App. LEXIS 8509, at *26 (Mich. Ct. App. Oct. 20, 2025) ("MCL 440.2209(2) renders the parties' contracts unmodifiable except by a signed writing between the parties. After the order confirmations were signed in this case, there were no further signed, written agreements that included the SLI drawing's dimensional requirements. Therefore, the SLI drawing cannot be considered under MCL 440.2209(2)."); *see also Express Warranties for the Sale of Goods under the Michigan UCC*, LexisNexis Practical Guidance (2025) ("Under the [UCC], . . . an executed contract that requires any modification to be in writing cannot be modified except as expressly permitted by the agreement.").

However, because Mich. Comp. Laws § 440.2858 is specific to modification and rescission only, *Quality Products*' discussion of and application to the doctrine of waiver still applies here. *See also* Mich. Comp. Laws § 440.2858(3) ("Although an attempt at modification or rescission does not satisfy the requirements of

subsection (2) [that it be in a signed writing], it may operate as a waiver."); *Johnson Controls, Inc. v. Jay Indus.*, 459 F.3d 717, 725 (6th Cir. 2006) ("*Quality Products* acknowledges that a 'course of conduct' can indicate a knowing waiver."); *S2 Yachts, Inc.*, 2021 U.S. Dist. LEXIS 220543 at *28 (deciding whether the parties expressly or impliedly agreed to waive a specific right with respect to agreement that could only be modified by a signed writing).

Accordingly, it is legally possible that the parties agreed by mutual assent to waive the written modification requirement such that Plaintiff's alleged post-execution assurances could be enforceable notwithstanding the original agreement's restrictions on modification. *See Trailer Bridge v. Kmart Corp.*, No. 07-11963, 2008 U.S. Dist. LEXIS 145622, at *10 (E.D. Mich. Jun. 30, 2008) ("parties to a contract may waive a requirement that any modifications be in writing, provided that there is 'clear and convincing evidence' of the parties' mutual agreement to do so") (quoting *Quality Products*, 469 Mich. at 364-65). But "to ensure that the requisite mutuality exists, and to prevent one party from unilaterally altering the original contract without the other party's consent, [*Quality Products*] determined that a waiver of a contractual requirement of amendment in writing must be established through clear and convincing evidence of mutual agreement *upon such a waiver*." *Id.* at *11 (quotation marks omitted; emphasis added); *see also Quality Products*, 469 Mich. at 377 ("[a] plaintiff must present clear and convincing evidence of conduct that

13

overcomes not only the substantive portions of the previous contract allegedly amended, but also the parties' express statements regarding their own ground rules for modification or waiver as reflected in restrictive amendment clauses").

Concerning waiver, Defendant specifically alleges as follows:

> In making express warranties for which EZLOGZ relied upon and which became the basis of the bargain for EZLOGZ's continued lease of the IOSIX ELDs, IOSIX intentionally waived the disclaimer of express warranties *and the signed-writing requirement* present in the November 27, 2017 agreement. *Such waivers were intentionally and mutually made and were demonstrated through the parties' mutual dealings.* Pursuant to such waivers, the IOSIX Contract included express warranties, including warranties that the IOSIX ELDs were compatible with necessary operating systems, software, and vehicles, and that use of IOSIX ELDs was compliant with [federal] regulations.

(ECF No. 15, PageID.143 (emphasis added)).

This issue admittedly presents a close mater. As an initial mater, these allegations regarding waiver are largely conclusory. And to the extent Defendant alleges that the parties' agreement to waive the modification restrictions was made and is demonstrated by their mutual dealings, the conduct alleged throughout Defendant's counterclaims largely concerns facts specific to "the substantive portions of the previous contract allegedly amended" (i.e., alleged conduct contrary to the original disclaimer of all warranties) rather than "the parties' own ground rules for modification." *See Quality Products*, 469 Mich. at 377. For example, Defendant does not allege that the parties agreed to oral revisions in the past, a fact deemed important in similar cases to establish clear and convincing evidence that parties

14

waived a restriction on oral modifications under *Quality Products*. *See, e.g., Trailer Bridge*, 2008 U.S. Dist. LEXIS 145622 at *12-16.

Nevertheless, Defendant alleges significantly more than the mere silence that was insufficient to establish waiver in *Quality Products*. *See Quality Products*, 469 Mich. at 377-78 (Defendant's mere silence, regardless whether [sic] defendant possessed knowledge of plaintiff's sales activity outside the contract, does not here amount to an intentional relinquishment of the sales-territory and sales-commissions limitations in the contract or the contract's restrictive amendment clauses.").  Here, in contrast, Defendant alleges that Plaintiff's principal and agents engaged in affirmative conduct via repeated discussions with Defendant to ensure the ELDs conformed to Defendant's needs, and that the parties worked mutually, albeit unsuccessfully, to achieve this goal.  And to the extent Defendant alleges that Plaintiff's agents made promises with respect to the ELD's condition and functionality during the parties' discussions, such oral agreements would specifically contradict the written contract's restriction of oral modifications. *See Trailer Bridge*, 2008 U.S. Dist. LEXIS 145622 at *12-16 (clear and convincing evidence of waiver established in part by (1) the parties' ongoing discussions about changing substantive provisions of the agreement and (2) evidence that the defendant orally agreed to amended terms).

The Court therefore concludes that, reading the totality of Defendant's allegations and construing them in the light most favorable to Defendant, it can be plausibly inferred that the parties engaged in a course of conduct contrary to the contractual right for modifications to be executed only in a signed writing. Stated differently, Defendant provides "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the purported waiver. *See Twombly*, 550 U.S. at 556.

Next, because Defendant sufficiently alleges waiver of the modification restriction, the Court relatedly concludes that Defendant also sufficiently alleges a course of conduct supporting its claim of modification. Specifically, Plaintiff's repeated post-execution statements about the ELD's condition and functionality, along with its apparent yet unsuccessful efforts to address Defendant's concerns, plausibly show a course of conduct contrary to the written contract's disclaimer of all warranties.

The Court reiterates that these issues of waiver and modification present an extremely close call, even at this early stage of the case. But where these issues are both generally factually intensive and evaluated on a case by case basis, the Court concludes that Defendant alleges enough to proceed to discovery on its claims of waiver and modification. The Court acknowledges, however, that discovery could ultimately support and/or strengthen Plaintiff's position that all the post-execution

statements and conduct show only "how [Plaintiff] was creating new technology under an AS-IS contract" (ECF No. 17, PageID.174),[5] rather than any manifestation of mutual assent to waive any right or modify the original agreement to include express warranties. This is particularly true where Defendant must ultimately establish both waiver and modification by clear and convincing evidence.

## B. Sufficiency of Alleged Warranties

Next, to the extent Plaintiff argues that the alleged warranties themselves are insufficiently pled, the Court disagrees.

Defendant specifically alleges that Plaintiff "made express warranties regarding the IOSIX ELDs' performance capabilities, including warranties that IOSIX ELDs were compatible with necessary operating systems, software, and vehicles, and that use of IOSIX ELDs was compliant with [Federal] regulations." (ECF No. 15, PageID.146). Defendant alleges that such warranties were created by Plaintiff's affirmations of fact, promises, and/or descriptions concerning the ELDs. *See* Mich. Comp. Laws § 440.2860(1)(a)-(b). And Defendant provides the following specific, supportive facts regarding such affirmations/promises/descriptions:

---

[5] Plaintiff relatedly argues that it was essentially just working with Defendant post-execution "to improve or tailor its product," not because it was legally obligated to do so, but merely as a good business practice. (ECF No. 21, PageID.227-28 n. 3).

- After initial delivery, Plaintiff's principal, Robert Vogt IV, "admitted the IOSIX ELDs were functioning 'like hot garbage.'" (ECF No. 15, PageID.140).

- Vogt responded "'yeah, it'll work'" when asked whether Plaintiff's proposed fixes "would be compatible with necessary operating systems, software, and vehicles." (ECF No. 15, PageID.141).

- "Thereafter, Mr. Vogt intentionally made additional affirmations of fact, promises, and descriptions relating to the IOSIX ELDs, stating that incompatibility issues were 'just fixed,' that the IOSIX ELDs 'will work starting from v135,' and that IOSIX's provided 'fixes' 'will definitely solve' the identified defects. Mr. Vogt further promised that the IOSIX ELDs would address issues of compatibility 'automatically[,] so you don't have to put eyes on the vehicles.'" (ECF No. 15, PageID.141-42).

- "When the proposed fixes did not address defects relating to IOSIX ELDs, IOSIX expressly stated on January 23, 2018 that a 'warranty swap' was the next step in addressing such defects." (ECF No. 15, PageID.142).

- "In or around December 26, 2017, Mr. Vogt intentionally made express affirmations of fact, promises, and descriptions relating to the IOSIX

18

ELDs' compliance with Federal Motor Carrier Safety Administration ("FMCSA") regulations, stating that EZLOGZ will not lose necessary FMCSA certificates when distributing and supporting IOSIX ELDs." (ECF No. 15, PageID.142).

Defendant also generally alleges that Plaintiff's agents made "additional" yet unspecified affirmations/promises/descriptions that "likewise became part of the basis of the bargain for EZLOGZ's continued lease of IOSIX ELDs." (ECF No. 15, PageID.142).

Plaintiff essentially argues that Defendant fails to plead the existence of any express warranty because the allegations lack the specificity required for this element.  The Court concludes, however, that Defendant's allegations with respect to this issue satisfy the applicable pleading requirements.

Plaintiff relies on various cases to support its position on this issue, but none warrant dismissal here.  First, in *Reynolds-Sitzer v. Eisai, Inc.*, 586 F. Supp. 3d 123 (N.D.N.Y. 2022), the Court stated that "[a] plaintiff must plead the exact terms of the warranty" . . . . *Id.* at 134 (cleaned up).  The Court concluded that the plaintiff met this burden by alleging that defendants warranted, through television advertisements and a product label, that a drug was safe and effective. *Id.*

Plaintiff relatedly cites *Wildman v. Medtronic, Inc.*, 874 F.3d 862, 870 (5th Cir. 2017),[6] which observed that an express warranty claim may be dismissed for "a failure to allege the claim with particularity." *Id.* at 870; *see also id.* ("Most of the express warranty claims that have been subject to *Twombly*/*Iqbal* dismissals in medical device cases have failed to plead the specifics of the warranty."). The Fifth Circuit concluded that the plaintiff met this requirement by identifying a specific representation on a manufacturer's website. *Id.* at 870-71.

Importantly, neither of these cases is binding within this circuit. The Court also finds them unpersuasive since they both concluded the alleged warranties were sufficiently pled.

With respect to authority from this circuit, Plaintiff cites *Montgomery v. Kraft Foods Global, Inc.*, No. 12-00149, 2012 U.S. Dist. LEXIS 173035 (W.D. Mich. Dec. 6, 2012), as a case within this circuit that "reject[ed] ill-pled claims about warranties." (ECF No. 21, PageID.226). But this case never mentions a requirement for specificity or particularity when pleading express warranties, and it dismissed the express warranty claim because the plaintiff insufficiently alleged she was the third-party beneficiary of a purported warranty (deriving from a contract between

_____

[6] Plaintiff cites another Fifth Circuit case, *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, but this antitrust case did not involve any express warranty. Although the case is helpful in discussing the general pleading requirements to survive a motion to dismiss, the Court finds its relevance to this case limited at best.

the two defendants), not because she failed to plead the existence of the warranty itself. *Montgomery*, 2012 U.S. Dist. LEXIS 173035 at *36-41. Accordingly, *Montgomery* does not warrant dismissal in this case.

Further, the federal rules governing Defendant's burden in this dispute implicitly counter the premise that an express warranty must be pled with some heightened level of specificity or particularity beyond general pleading requirements. Indeed, Fed. R. Civ. P. 9, which applies to pleading special matters, explicitly requires that claims of fraud or mistake be pled "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The lack of any such provision concerning allegations of an express warranty supports that the general rules of pleading apply here, without any particularity or similar requirement. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-68 (1993) (rejecting argument that "the degree of factual specificity required of a complaint by the Federal Rules of Civil Procedure varies according to the complexity of the underlying substantive law" because (1) this would amount to a heightened pleading standard inconsistent with the liberal requirements of Fed. R. Civ. P. 8(a)(2); and (2) "the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983"); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508

(2002) (applying similar reasoning to conclude "that an employment discrimination complaint need not include [specific] facts [establishing a prima facie case of discrimination] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)").

The Court now turns to the general rules applicable here.[7]  Fed. R. Civ. P. 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555.  Although "a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action,'" *Thompson*, 773 F.3d at 750 (quoting *Twombly*, 550 U.S. at 555), this burden "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

The Court concludes that Defendant's allegations supporting the existence of express warranties meet this burden, particularly when read together and construed

---

[7] Plaintiff admittedly concedes in its reply that the general rules of pleading apply, arguing instead that a certain degree of specificity, which Defendant's allegations lack, is necessary to establish the plausible existence of an express warranty, particularly in light of the written disclaimer of all warranties here.  This premise specifically contradicts the Supreme Court's rationale in *Leatherman* and *Swierkiewicz*, however.  Further, having concluded that the cited cases requiring plaintiffs to plead the exact terms of a warranty or allege an express warranty with an analogous degree of specificity or particularity are not binding in this matter, the Court finds Defendant's allegations sufficient for the reasons explained.

with all reasonable inferences in Defendant's favor.  Specifically, the allegations go beyond mere labels and conclusions to identify specific statements and assurances Vogt made regarding the ELDs, concerning both their functionality and regulatory compliance.  Further, a fair reading of the counterclaims, in conjunction with the practicalities of litigation, shows that Defendant expects specific evidence of the purported warranties to be revealed through the course of discovery, particularly regarding purported statements made by Plaintiff's agents.

Lastly, Plaintiff's reliance on *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 284 Mich. App. 617 (Mich. Ct. App. 2009), does not alter the Court's decision.  Plaintiff cites the following legal principals from *Heritage* as demonstrating that Defendant's allegations are insufficient:

- "In an action for breach of express warranty, the court will not presume the existence of an express warranty, and the burden is on the plaintiff to prove that an express warranty exists." *Id.* at 638.

- "The fact that a buyer may have an 'understanding' does not give rise to an express warranty under MCL 440.2313 when no express statement of warranty has been made." *Id.* at 635 n. 11 (citation omitted).

- "Nor is a 'general expression of opinion' sufficiently specific to create an express warranty under MCL 440.2313." *Id.* (citation omitted).

23

While these rules accurately reflect Michigan law regarding express warranties, they do not warrant dismissal, at least at this early stage of the case. First, *Heritage* was decided after a full bench trial, so it is not particularly helpful to show Defendant's burden at this early stage of the case. As discussed, the Court concludes that Defendant has met the relatively minimal burden at this stage to raise a reasonable expectation that discovery will reveal evidence of express warranties.

Concerning the latter two premises Plaintiff cites from *Heritage*, the Court cannot conclude as a matter of law at this preliminary stage that any of the purported warranties clearly amount to mere expressions of opinion or an understanding by Defendant alone. While some of Vogt's alleged statements are somewhat vague and may ultimately fall short of creating any express warranty at a later stage of litigation, they nevertheless sufficiently relate to the ELD's functionality and regulatory compliance and thus can be plausibly construed as affirmations of fact, promises, and/or descriptions concerning the goods. In sum, Defendant alleges sufficient facts to plausibly establish the purported warranties and give Plaintiff adequate notice of the basis of the claim(s)—particularly when Defendant's allegations are taken together and construed with all reasonable inferences in its favor.

## C.      Statute of Limitations

Next, the Court rejects Plaintiff's statute of limitations defense at this early stage of proceedings.  Critically, statute of limitations defenses are typically not resolved at the pleading stage of the litigation. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations"); *Prepared Food Photos, Inc. v. Lakess Super Mkt., Inc.*, No. 23-100, 2023 U.S. Dist. LEXIS 233785, at *4 (W.D. Mich. Dec. 15, 2023) ("A 12(b)(6) motion based on a statute of limitations is only appropriate where it is clear from the face of the complaint that relief is time-barred.").

Defendant's counterclaims must both have been filed within four years of accrual, Mich. Comp. Laws § 440.2956(1), which occurs "when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later," Mich. Comp. Laws § 440.2956(2).  Here, any claims that accrued before 2020 would certainly fall outside the limitations period in this case.

That said, the Court acknowledges that Defendant allegedly discovered immediate problems with the ELDs in late 2017, with much of the specific promises Plaintiff allegedly made occurring around this time or in early 2018.  But reading

the counterclaims in a light most favorable to Defendant, these facts relate to modification of the parties' agreement and the *creation* of express warranties, not any breach thereof.  Rather, Defendant alleges that Plaintiff breached the modified contract and post-execution warranties by failing to cure the ELD defects and otherwise fulfil its promises by some later, unspecified date(s).  It therefore remains unclear from Defendant's pleadings when exactly Plaintiff's alleged post-modification failures occurred, let alone whether the failures were or should have been discovered before the limitations period.  Since discovery should go far in answering these questions, the Court declines at this stage to dismiss either of Defendant's counterclaims as untimely.

* * *

For the reasons given, the Court ORDERS that Plaintiff's motion to dismiss (ECF No. 17) is DENIED.

Dated: January 28, 2026                    s/Robert J. White
                                           Robert J. White
                                           United States District Judge